UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH J. RIMKUS<br>3044 Avalon Terrace Drive<br>Valrico, Florida 33594-5601<br><br>      Plaintiff,<br><br>      v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br>Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street<br>Tehran, Iran,<br><br>THE IRANIAN MINISTRY OF<br>INFORMATION AND SECURITY<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran,<br><br>and<br><br>IRANIAN ISLAMIC REVOLUTIONARY<br>GUARD CORPS<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran<br><br>      Defendants. | Case No._____ |

**COMPLAINT FOR PUNITIVE DAMAGES PURSUANT TO SECTION 1083(C)(3) OF
THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2008**

Plaintiff, by his attorneys, complains of the defendants and alleges for his Complaint as follows:

## **INTRODUCTION**

1. On June 25, 1996, nineteen American servicemen were killed in the terrorist bombing of Khobar Towers, a residential military complex operated by the United States Air Force in Dhahran, Saudi Arabia. Terrorist members of Hizbollah, funded by the Islamic Republic of Iran, planned and committed the bombing. The Iranian Ministry of Information and Security and the Iranian Islamic Revolutionary Guard Corps funded, trained, and otherwise assisted Hizbollah in executing the bombing. Plaintiff is the father of Airman First-Class Joseph E. Rimkus, a serviceman killed in the attack.

2. Plaintiff previously brought suit in this Court against the instant defendants under the "terrorism exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(7). *See Rimkus v. Islamic Republic of Iran,* Civ. No. 06-1116 (RCL).

3. On August 26, 2008, this Court entered a judgment in favor of Plaintiff and against defendants Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Iranian Islamic Revolutionary Guard ("IRGC"), jointly and severally, in the amount of $5,000,000.00 in compensatory damages under the FSIA, and based upon a claim of intentional infliction of emotional distress. The Court denied Plaintiff's request for punitive damages.

4. Recognizing the difficulties faced by American victims of terrorism in bringing suits against foreign state sponsors of terrorism, and the even greater challenges faced by successful plaintiffs who seek to enforce their judgments against such defendants, Congress recently enacted sweeping amendments to the FSIA in §1083 of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, § 1083, January 28, 2008 ("NDAA").

5. Section 1083 of NDAA revised the terrorism exception to sovereign immunity by repealing §1605(a)(7) of Title 28 and replacing it with a separate provision, §1605A. Section 1605A(c) creates an entirely new federal cause of action for American citizens injured in terrorist attacks sponsored by designated foreign state sponsors of terrorism. 28 U.S.C. §1605A(c). This new cause of action permits such plaintiffs to seek a broad range of damages, including punitive damages, against foreign state defendants. *Id.* The foreign state is also vicariously liable for the acts of its officials, employees, or agents.

6. Section 1083 of the Defense Act also amends §1610 of the FSIA, which governs enforcement of judgments against foreign states. A new subsection, §1610(g)(1), contains a statutory-veil-piercing provision, permitting judgments entered under §1605A against a foreign state to be enforced against assets held by the foreign state's subsidiaries. Section 1610(g)(2) also eases enforcement by permitting enforcement of §1605A judgments against assets of the foreign state judgment debtor regulated by the United States.

7. Section 1083(c) of NDAA also provides that "if an action arising out of an act or incident has been timely commenced under" §1605(a)(7) then "any other action arising out of the same act or incident may be brought under" §1605A "if the new action is commenced not later than the latter of 60 days after (A) the date of the entry of judgment in the original action or (B) the date of the enactment of" NDAA. §1083(c)(3).

8. Accordingly, Plaintiff brings the instant action under §1605A within 60 days after the date of entry of judgment in the original action, pursuant to §1083(c)(3) of NDAA.

## JURISDICTION

9. This Court has jurisdiction over this matter and defendants pursuant to 28 U.S.C. §§1330, 1331, 1332(a)(2) and 1605A(a)(l).

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(f)(4).

## PARTIES

11. Plaintiff Joseph J. Rimkus is a United States citizen and a resident of the State of Florida. He is the father of Joseph E. Rimkus, a United States Air Force Airman killed in the June 25, 1996 terrorist bombing of Khobar Towers in Dhahran, Saudi Arabia. Joseph E. Rimkus was, at all applicable times, a citizen and national of the United States. Joseph E. Rimkus was harmed by the terrorist attack.

12. Defendant Iran at all times relevant hereto was a foreign state designated a state sponsor of terrorism pursuant to 50 U.S.C. Appx. § 2405(j).

13. Defendant MOIS is Iran's international and domestic intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for terrorism and performed actions which caused the terrorist bombing to harm Plaintiff.

14. Defendant IRGC is a non-traditional agency of Iran. Within the scope of its agency and office, IRGC provided material support and resources for terrorism and performed actions which caused the terrorist bombing to harm Plaintiff.

## STATEMENT OF FACTS

15. In the early 1980s, Iran developed a program of carefully planned terrorist attacks designed to destabilize Middle Eastern governments and spread fundamentalist Islamic

principles. MOIS and IRGC were the primary agents that planned, supported, and executed the terrorist acts.

16. In furtherance of this terrorist program, Iran, MOIS, and IRGC established Hizbollah as a terrorist organization tasked with spreading fundamentalist Islamic principles and destabilizing governments through terrorist acts such as kidnapping, torture, and murder. Throughout the 1980s, Iran, MOIS, and IRGC provided funds, training, and direction to Hizbollah in furtherance of these goals.

17. Hizbollah established operations in a number of countries by the early 1990s though the use of funds, tactics, and training provided by Iran, MOIS, and IRGC. The funds, tactics, and training were provided both within and without the nation of Iran.

18. In the early 1990s, the United States military developed a presence in Saudi Arabia. Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the Saudi monarchy. Iran believed that the Saudi monarchy was pro-Western and corrupt and that a large-scale terrorist operation designed to kill Americans would result in revolution and the subsequent establishment of an Islamic republic in Saudi Arabia. The Iranian government, acting through its agents MOIS and IRGC and in concert with Hizbollah, began preparations for the bombing of a target associated with American interests.

19. In 1995, Iran, through MOIS and IRGC, prepared to execute an attack on an American target. Hizbollah operatives scouted potential American targets in Saudi Arabia, and explosives were smuggled into Saudi Arabia and hidden for later use. An elaborate professional intelligence network was established and tasked with carrying out the bombing.

20. By June 1996, bomb components, including high explosives, incendiary materials, and sophisticated fuses and tools used in the bomb assembly, were stored in Saudi

Arabia. Agents of Defendants Iran, MOIS, and IRGC selected and approved Khobar Towers as the target to be destroyed by Hizbollah agents. Khobar Towers, a multi-story apartment building, housed United States Air Force and other United States military personnel.

21. Airman First-Class Joseph E. Rimkus, a United States citizen and member of the United States Air Force, was stationed in Dhahran, Saudi Arabia, and resided in Khobar Towers in June, 1996. Airman Rimkus, like the other servicemen residing in Khobar Towers, was tasked with enforcing the "no-fly zone" in southern Iraq.

22. On June 25, 1996, Air Force Sergeant Alfredo Guerrero observed two Hizbollah terrorists park a Mercedes Benz tanker-truck beside the fence line and within 100 feet of the American sector of the Khobar Towers complex. The truck contained a 5,000 pound bomb, and the Hizbollah terrorists immediately fled the scene in a waiting sedan. Sergeant Guerrero, suspicious of the activity surrounding the vehicle, raised the alarm. American military personnel began to exit the towers. Minutes later, the bomb exploded; the exterior wall of Khobar Towers was destroyed, the building suffered extensive damage, and an eighty-five foot wide crater was created by the blast.

23. The explosion killed nineteen members of the United States Air Force, including Joseph E. Rimkus.

### CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS
### ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

24. The preceding paragraphs are incorporated by reference as though fully set forth herein.

25. Iran is a foreign state that at all relevant times was designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A.

26. Iran and the other defendants provided material support and resources, within the meaning of 28 U.S.C. §1605A, which caused and facilitated the terrorist bombing.

27. Defendants MOIS and IRGC were at all relevant times acting as officials, employees, and/or agents of Iran, and they provided the material support and resources which caused and facilitated the terrorist bombing within the scope of their office, employment and/or or agency.

28. Defendants provided Hizbollah with material support and resources and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the terrorist bombing which harmed Plaintiff.

29. The terrorist bombing was an extrajudicial killing within the meaning of 28 U.S.C. §1605A.

30. The injuries suffered by Plaintiff as a result of the terrorist bombing caused severe harm, including: loss of guidance, companionship and society, loss of consortium; severe emotional distress and mental anguish; loss of solatium; and pecuniary loss.

31. The harm and injuries suffered by Plaintiff due to the terrorist bombing were the direct and proximate result of Defendants' conduct described herein.

32. Defendants are therefore jointly and severally liable for the full amount of Plaintiff's damages under 28 U.S.C. §1605A(c), in amounts to be determined at trial.

33. Defendants' conduct was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. §1605A(c) in amounts to be determined at trial.

WHEREFORE, Plaintiff Joseph J. Rimkus demands judgment be entered against Defendants, jointly and severally, as follows: punitive damages in the amount of not less than TWO BILLION DOLLARS ($2,000,000,000.00), which amount shall be proven at trial; and whatever further and necessary relief this Court deems proper.

                              Respectfully submitted,

By:   Peter C. Grenier, Esquire (DC Bar # 418570)
       Michael K. Hibey, Esquire (DC Bar #502890)
       BODE & GRENIER, L.L.P.
       1150 Connecticut Avenue, N.W.
       Ninth Floor
       Washington, D.C. 20036
       (202) 828-4100 (telephone)
       (202) 828-4130 (facsimile)
       *Counsel for Plaintiff*

Dated:  September 19, 2008